

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 4:18-mj-618 |
| MELISSA SUMEROUR (01)<br>LATOSHA MORGAN (02) | |

CRIMINAL COMPLAINT

I, Margo Palmer, being duly sworn, hereby state the following:

Health Care Fraud

Beginning in or about January 2011 and continuing to in or about March 2017, in the Fort Worth Division of the Northern District of Texas, defendants **Melissa Sumerour** and **Latosha Morgan**, did knowingly and willfully conspired with each other and others, to commit health care fraud, and in furtherance of the conspiracy and to effect its objects, committed overt acts in the Northern District of Texas and elsewhere, including submitting or causing the submission of false claims, in violation of 18 U.S.C. § 371 and 1347.

1. I am a Special Agent with the Department of Justice Office of the Inspector General, and have been so employed since 2010. I am responsible for investigating federal criminal violations, including health care fraud, occurring within the Northern District of Texas.

2. Title 18, United States Code, Section 1347, provides in relevant part:

Whoever knowingly and willfully executes, or attempts to execute, a scheme or artifice (1) to defraud any health care benefit program; or (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program, in connection with the delivery of or payment for health care benefits, items, or services, shall be fined under this title or

Criminal Complaint - Page 1

imprisoned not more than 10 years, or both.

3. Title 18, United States Code, Section 371, provides:

If two or more persons conspire to defraud the United States and one of such persons does an act to effect the object of the conspiracy, such persons shall be fined under this title or imprisoned not more than 5 years, or both.

4. This affidavit is made in support of criminal complaints commanding the arrest of Melissa Sumerour and Latosha Morgan. Based on the investigation and the information contained in this affidavit, probable cause exists to believe that beginning in or about January 2011 continuing to in or about March 2017, Sumerour and Morgan knowingly and willfully conspired with each other and others, including Physician A, to commit health care fraud, and in furtherance of the conspiracy and to effect its objects, committed overt acts in the Northern District of Texas and elsewhere, including submitting or causing the submission of the foregoing false claims identified in paragraphs 23 and 24 in violation of 18 U.S.C. § 371 (18 U.S.C. § 1347). The following recitation of facts and circumstances are provided as a direct result of my personal observations, information I have received from other participating agents and law enforcement officers, and information obtained from court and law enforcement records.

5. A "health care benefit program" under Section 24(b) of Title 18, United States Code, is defined as "any public or private plan or contract, affecting commerce, under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be

made under the plan or contract." As used herein, a "health insurance program" or "health care program" means a health care benefit program.

6. The Federal Employees Compensation Act (FECA) provides disability compensation benefits and payment for medical and rehabilitation care for civilian employees of the federal government who sustained on the job injuries or employment-related occupational illness. FECA is a health care benefit program as defined by 18 U.S.C. § 24(b).

7. FECA is administered by the U.S. Department of Labor (DOL), Office of Workers' Compensation Programs (OWCP). OWCP requires certain reports to be submitted during a patient's rehabilitative care. Certain employing federal agencies require a Duty Status Report known as a "CA-17" to be completed by the treating Physician, Physician's Assistant, or Nurse Practitioner and submitted to the employing agency.

8. CPT code 99080 is defined by the American Medical Association as "special reports such as insurance forms, more than the information conveyed in the usual medical communications or standard reporting form."

9. CPT code 99358 is defined by the American Medical Association as for "prolonged evaluation and management service before and/or after direct patient care; first hour."

10. Physical therapy is a method of treatment that uses a variety of exercises and movements to promote mobility and function in a patient. In general, physical therapy services are a service that is covered by OWCP, but OWCP will not pay for physical

therapy conducted in unlicensed facilities, provided by unlicensed professionals, or supervised or prescribed by chiropractors.

11. In general, drug screen testing, also known as toxicology testing, is a diagnostic service that is required to be ordered by a primary care manager (PCM) which includes a Medical Doctor, Doctor of Osteopathic Medicine, Physician's Assistant, or a Nurse Practitioner. Once ordered, the tests are performed in a Clinic Laboratory Improvement Amendments (CLIA) certified facility. Toxicology tests are a covered FECA benefit when prescribed by a licensed physician and medically necessary.

12. Physician A was a licensed medical doctor in the State of Texas who owned and operated three medical clinics for injured federal workers located in the Texas cities of Temple, Waco, and Fort Worth. Melissa Sumerour was an office administrator and biller for the Waco and Temple clinics. Melissa Sumerour reported directly to Physician A. As part of her duties, Melissa Sumerour was responsible for submitting bills to OWCP on behalf of the Temple and Waco clinics.

13. Latosha Morgan was an office administrator and biller for the Fort Worth Clinic. Latosha Morgan reported directly to Physician A. As part of her duties, Latosha Morgan was responsible for submitting bills to OWCP on behalf of the Fort Worth clinic.

14. Melissa Sumerour, Latosha Morgan, and Physician A operated worker's compensation clinics in Waco, Temple, and Fort Worth. The clinics only treated OWCP patients.

15. Physician A employed Melissa Sumerour to submit bills to OWCP for the Waco and Temple Clinics. According to Latosha Morgan's interview conducted on February 18, 2016, Melissa Sumerour instructed other office staff on billing procedures at the clinics.

16. Physician A employed Latosha Morgan to submit bills to OWCP for the Fort Worth clinic.

17. Physician A incentivized Melissa Sumerour and Latosha Morgan to maximize billing by offering a bonus if their respective clinics billed over $50,000 in a week. The bonus for Morgan was 2% of the total amount billed and resulted in bonuses as large as $6,000 per month, while Sumerour received 1% of the total billed to OWCP.

18. Physician A, Melissa Sumerour, and Latosha Morgan billed CPT code 99358 for completing CA-17s, Duty Status Reports, even though CPT code 99080, which paid half the amount of CPT code 99358, was the appropriate code for this service. CPT code 99358 represented to OWCP that Physician A, a Physician's Assistant, or a Nurse Practitioner drafted the reports when in actuality non-medical clinic staff drafted the reports and not Physician A.

19. In or about December 2015, Physician A directed Melissa Sumerour and Latosha Morgan to bill for drug screen testing as if the clinic was conducting the testing when the clinics were only collecting specimens. Latosha Morgan stated in her interview that she submitted these bills to OWCP for reimbursement even though she knew they were false because the clinic did not do any actual testing, only urine collection.

20. Melissa Sumerour taught Latosha Morgan and others to change billing submitted by licensed medical professionals in order to maximize the billing for each service, and for

services which did not occur. For example, in an interview conducted on February 18, 2016, Fort Worth clinic employee, Person B, stated she and Morgan were directed by Sumerour to charge CPT code 99358 for the CA-17 forms.

21. Melissa Sumerour and Latosha Morgan billed OWCP for physical therapy services purportedly conducted at their respective clinics although the clinics were not licensed by the State of Texas to provide physical therapy, utilized unlicensed professionals to conduct the physical therapy, and employed chiropractors to supervise the physical therapy contrary to state and OWCP rules. In interviews conducted on February 18, 2016, chiropractors Person C and Person D both stated that they did not supervise physical therapy at the clinics, but only conducted Functional Capacity Evaluations and Physical Performance Evaluations.

22. Melissa Sumerour, billed and instructed others to bill, for physical therapy services purportedly conducted at the clinics regardless, of what services were actually completed. Melissa Sumerour instructed Waco clinic office manager Person E and others to always bill five units of Therapeutic Activities, five units of Therapeutic Exercises, and four units of Manual Therapy, regardless of how much physical therapy the patient actually completed. This became known as the "5-5-4" method of billing for physical therapy at the clinics. If physical therapy billing was not completed according to the 5-5-4 method, Melissa Sumerour would change the billing before submitting it to OWCP.

For example, in a March 25, 2016, comparison of physical therapy notes to physical therapy units billed, Temple physical therapist Person F confirmed with agents that units were inflated on the billing records for the same services noted in her notes.

23. Specifically, Melissa Sumerour and Latosha Morgan caused to be submitted the false claims reflected in the table below:

| OWCP Bene-ficiary | Date of Service | Services Billed | Claim No. | Amount Billed | Amount Paid | Defendant | Nature of the Falsity |
|---|---|---|---|---|---|---|---|
| J.S | 2/13/15 | Manual Therapy | 0328 | $165.00 | $156.15 | Melissa Sumerour | Services not rendered |
| R.C | 2/25/15 | Therapeutic Activities | 0435 | $240.00 | $226.50 | Melissa Sumerour | Services not rendered |
| A.T | 12/1/15 | Therapeutic Activities | 1062 | $240.00 | $227.03 | Melissa Sumerour | Services not rendered |
| S.V. | 7/7/15 | Manual Therapy | 0003 | $165.00 | $156.15 | Melissa Sumerour | Services not rendered |
| S.V. | 12/18/15 | Toxicology Testing | 0348 | $1,140.00 | $972.64 | Latosha Morgan | Services not rendered |
| S.L. | 12/8/15 | Toxicology Testing | 0427 | $1,140.00 | $972.64 | Latosha Morgan | Services not rendered |
| M.M. | 12/18/15 | Toxicology Testing | 1157 | $1,140.00 | $1055.31 | Latosha Morgan | Services not rendered |

24. From January 1, 2011 through March 30, 2017, Physician A, Melissa Sumerour, and Latosha Morgan submitted and caused the submission of more than approximately $5.9 million in false and fraudulent claims to FECA.

25. Based on the above information, your affiant believes that there is probable cause to believe that Melissa Sumerour and Latosha Morgan conspired to commit healthcare fraud in violation of Title 18, United States Code, §§ 371 and 1347.

Respectfully submitted,

_____
Margo Palmer
Department of Justice Office of the Inspector General

Subscribed and sworn to before me on this 1st day of October, 2018, at 2:50 pm., in Fort Worth, Texas.

_____
JEFFREY L. CURETON
United States Magistrate Judge